**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN VOLTARELLI,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 21-1068** |
| **IMMACULATA UNIVERSITY,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                   **July 14, 2022**

Defendant Immaculata University has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff John Voltarelli's Amended Complaint, which asserts breach of contract, common law due process, promissory estoppel, and *quantum meruit* claims. For the reasons set forth below, Defendant's motion will be granted in part and denied in part.

### I.   BACKGROUND

Plaintiff filed a Complaint challenging his dismissal from Defendant's Doctor of Psychology program.[1] The Court granted Defendant's first motion to dismiss without prejudice, but granted Plaintiff leave to amend the Complaint.[2] Plaintiff's Amended Complaint alleges that Plaintiff worked full-time in addition to being a full-time graduate student during his seven years in Defendant's program.[3] In May 2020, Defendant "dismissed [P]laintiff under the pretextual guise that he had failed to complete his practicum internship, for which he received two 'F's'."[4]

---

[1] Compl. [Doc. No. 1] ¶¶ 3, 6, 7.

[2] *See generally* Dec. 8, 2021 Mem. Op. [Doc. No. 10].

[3] Am. Compl. [Doc. No. 1] ¶¶ 13, 14. For the purpose of evaluating Defendant's motion to dismiss, the Court accepts the factual allegations in the Amended Complaint as true.

[4] Am. Compl. [Doc. No. 1] ¶¶ 7, 12.

The PsyD Practicum Coordinator, Sister Acri, failed to accommodate Plaintiff's requests to change his practicum placement and displayed "personal animus" toward him by giving Plaintiff a failing grade.[5]

## II.   LEGAL STANDARD

If a plaintiff fails to "state a claim upon which relief can be granted," the complaint will be dismissed.[6] The "[f]actual allegations [made by the plaintiff] must be enough to raise a right to relief above the speculative level."[7] This requires the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] In considering whether a plaintiff has met this burden, the Court will accept the information pled in the complaint and any attachments thereto as true.[9] "All relevant evidence and all reasonable inferences that can be drawn from the record are . . . viewed in the light most favorable to the non-moving party."[10]

## III.   DISCUSSION

Defendant moves to dismiss Plaintiff's claims under Pennsylvania law for breach of contract, common law due process, promissory estoppel, and *quantum meruit* claims. The Court addresses each claim in turn.

---

[5] Am. Compl. [Doc. No. 12] ¶¶ 18, 45.

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).

[10] *Jordan v. Fox, Rothschild, O'Brian, & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994) (citation omitted).

### A.  Breach of Contract Claim

To assert a breach of contract claim under Pennsylvania law, a plaintiff must allege facts showing that "there was a contract, the defendant breached it, and plaintiff[] suffered damages from the breach."[11] A contractual relationship exists "between a private educational institution and an enrolled student" which enables "a student [to] bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract."[12] "[T]he written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution" constitute the contract.[13] Additionally, the student's "allegations must relate to a specific and identifiable promise that the school failed to honor."[14] The student is therefore required to identify "specific undertakings in the [contract] that were not provided."[15]

Plaintiff first alleges that Defendant breached a portion of Defendant's course catalogue, which states that faculty members are "responsible for outlining grading policies in writing to students at the beginning of each course."[16] Plaintiff argues that this created a contractual obligation that Sister Acri breached by changing the criteria for passing the course mid-semester.[17] However, the communication from Sister Acri effecting the alleged change, which

---

[11] *McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010).

[12] *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999).

[13] *Id.*

[14] *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x. 129, 133 (3d Cir. 2011) (citations omitted); *see also David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016).

[15] *David*, 177 F. Supp. 3d at 925 (quoting *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D.Pa.2012)).

[16] Am. Compl. Ex. E [Doc. No. 12] at ECF page 25.

[17] Am. Compl. [Doc. No. 12] ¶ 21.

Plaintiff attaches as Exhibit G to the Amended Complaint, clearly characterizes this change as a remedial plan that Plaintiff was required to complete in order to pass his practicum.[18] The implementation of a remedial plan is allowed under a PsyD Program Handbook provision, which provides that "a student [who] scores lower than '3' on any practicum rating item" may require "a remedial plan [to] be put in place."[19] Plaintiff received scores below that level in several areas in an evaluation performed on September 14, 2019, and so was qualified for a remedial plan under this provision.[20] Plaintiff has not plausibly alleged that the implementation of the remedial plan, which bears his signature, controverted the grading policy outlined at the beginning of the semester.[21]

Plaintiff further alleges that the handbook dictates that the final grading decision regarding a student whose practicum performance is identified as being unsatisfactory should be made by the PsyD Practicum Coordinator, the practicum seminar leader, and the student's primary practicum supervisor. [22] Plaintiff argues that this created a contractual obligation to consult Plaintiff's practicum supervisor, which Defendant allegedly breached by failing him despite his supervisor's contrary recommendation.[23] However, Sister Acri consulted Plaintiff's

---

[18] Am. Compl. [Doc. No. 12] ¶ 21; Am. Compl. Ex. G [Doc. No. 12] at ECF page 37; Def.'s Reply Supp. Mot. Dismiss [Doc. No. 17] at 2–3.

[19] Def.'s Mot. Dismiss Am. Compl. Ex. 2 [Doc. No. 13-3] at ECF page 75 n.3.

[20] Am. Compl. Ex. M [Doc. No. 12] at ECF page 50; *see* Def.'s Mot. Dismiss Am. Compl. Ex. 1 [Doc. No. 13-2] at ECF page 2 (citing the date of evaluation as September 14, 2019).

[21] Am. Compl. Ex. E [Doc. No. 12] at ECF page 25; Am. Compl. Ex. H [Doc. No. 12] at ECF page 39; Def.'s Mot. Dismiss Am. Compl. Ex. 1 [Doc. No. 13-2] at ECF page 2. Plaintiff does not dispute the contents of the remedial plan attached to Defendant's motion, but instead argues that the date on it is inaccurate. Pl.'s Sur-Reply [Doc. No. 18] at 6. The plan itself is undated. Even if Plaintiff received the plan from Sister Acri in October of 2019, as he alleges, it is based on the evaluation completed by his practicum supervisor on September 14, 2019. *See* Def.'s Mot. Dismiss Am. Compl. Ex. 1 [Doc. No. 13-2] at ECF page 2.

[22] Am. Compl. Ex. H [Doc. No. 12] at ECF page 39.

[23] Am. Compl. [Doc. No. 12] ¶ 22.

practicum supervisor, and the policy anticipates that the decision will be made through consultation with the identified individuals, not by the practicum supervisor alone.[24]

Plaintiff also cites to a section of Defendant's handbook that lists the responsibilities of the Practicum Coordinator, Sister Acri, which includes "[r]esolving issues."[25] Plaintiff argues that this created a contractual obligation which Defendant breached when Sister Acri would not let Plaintiff change his practicum site mid-semester, even though Sister Acri knew that he was not getting testing and assessment experience.[26] Plaintiff alleges that Sister Acri "delayed in giving plaintiff assessment experience until after the semester was over," and that "[t]urning in assessment work late was used as a pretext to fail the plaintiff."[27] However, even if the phrase "resolve issues" could be considered concrete enough to constitute a binding requirement, the emails Plaintiff attached to the Amended Complaint indicate that he wanted to change the site because of the long commute.[28] Plaintiff has not pled facts showing that Sister Acri did not work to resolve issues involving his practicum site, as their emails indicate that Sister Acri offered him alternative solutions and guidance for how to receive a passing grade.[29]

---

[24] Def.'s Mem. Law Supp. Mot. Dismiss [Doc. No. 13-1] at 8. The exhibits appended to the Amended Complaint demonstrate that Plaintiff's practicum supervisor wrote emails to Sister Acri that discussed Plaintiff's performance and that she "submitted documentation attesting" to his skills. Am. Compl. Exs. I–K [Doc. No. 12] at ECF pages 41, 44, 46.

[25] Am. Compl. Ex. L [Doc. No. 12] at ECF page 48.

[26] Am. Compl. [Doc. No. 12] ¶ 23; Am. Compl. Ex. M [Doc. No. 12] at ECF page 54 (evaluation from referenced testing site indicating he was not receiving testing/assessment experience).

[27] Am. Compl. [Doc. No. 12] ¶ 23.

[28] Am. Compl. Exs. B [Doc. No. 12] at ECF pages 17. An October 15, 2019 email exchange appended to the Amended Complaint indicates that Plaintiff requested not to leave his current site, but to add on another site because of the long commute. Am. Compl. Ex. B [Doc. No. 12] at ECF page 17. Sister Acri responded that she could "not consider [him] for a second, concurrent site because [he had] not remediated the problems identified during the most recent performance review at the current site." Am. Compl. B [Doc No. 12] at ECF page 16.

[29] Am. Compl. Exs. B, G, N [Doc. No. 12] at ECF page 16, 37, 56.

Further, Plaintiff alleges that Defendant breached its policy that, when "a PsyD student's behavior or other needs . . . are of significant concern or unresolved, further information will be obtained and the student will meet with Student Review Committee ["SRC"] members and/or representatives."[30] Plaintiff asserts that this policy created a contractual obligation that Defendant breached because he never met with the SRC or its members.[31] Defendant argues that Plaintiff exchanged emails with Sister Acri, who is a member of the SRC, and that the remediation plan that she sent to Plaintiff shows that he interacted with the SRC.[32] However, it is unclear whether Plaintiff ever met with the SRC or its representatives as the policy requires. It is also unclear whether the policy required an in-person meeting or if email exchanges sufficed. At this early stage, Plaintiff has pled sufficient facts to plausibly allege that this handbook provision created a contractual obligation that Defendant breached. Plaintiff's breach of contract claim may proceed, but solely with respect to Defendant's policy that Plaintiff needed to meet with at least one member of the SRC before his dismissal.[33]

### B.  Common Law Due Process Claim

Defendant next seeks to dismiss Plaintiff's common law due process claim. Defendant argues that Plaintiff has failed to allege that Defendant is a public institution.[34] As an initial

---

[30] Am. Compl. Ex. P [Doc. No. 12] at ECF page 60.

[31] Am. Compl. [Doc. No. 12] ¶ 24.

[32] Def.'s Mem. Law Supp. Mot. Dismiss [Doc. No. 13-1] at 9.

[33] Universities "have broad discretion to implement and enforce academic rules and regulations." *Thode v. Ladany*, No. 29 EDA 2014, 2014 WL 10795057, at *4 (Pa. Super. Ct. Nov. 6, 2014). The Court will "not interfere in a school's academic decisionmaking absent an abuse of discretion." *Id.* This claim does not concern how Defendant academically evaluated Plaintiff, but instead pertains to the narrow issue of whether Defendant failed to follow procedures outlined in its handbook before dismissing Plaintiff.

[34] *See* Def.'s Mem. Law Supp. Mot. Dismiss [Doc. No. 13-1] at 11; *Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 481 (3d Cir. 2010).

matter, private universities "need not endow their students with the constitutional due process protections that state universities are obligated to provide."[35] The Amended Complaint contains no factual allegations to support Plaintiff's assertion that Defendant is a private university that "serves a public function" and must therefore provide due process protections to students.[36]

When a private university dismisses a student on disciplinary grounds, "students . . . are entitled . . . to those procedural safeguards which the school specifically provides" assuming that those procedures are "fundamentally fair."[37] However, the Amended Complaint alleges that the dismissal was for academic, not disciplinary reasons.[38] Further, the Amended Complaint does not include any allegation that Defendant maintained policies entitling Plaintiff to the particular procedures he sought, such as a hearing at which he could obtain representation, call witnesses, and give a statement to a dismissal committee, or that the procedures Defendant provided were fundamentally unfair.[39] Plaintiff's common law due process claim is therefore dismissed.

---

[35] *Kimberg*, 411 F. App'x at 481 (citing *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super. Ct. 1991)).

[36] Am. Compl. [Doc. No. 12] ¶ 29. As in the initial Complaint, Plaintiff argues that Plaintiff must provide due process protections "if defendant received governmental aid." Pl.'s Answer Def.'s Mot. Dismiss [Doc. No. 16] at 6. Plaintiff further contends that Defendant could be considered a "quasi-public" institution that needed to comply with the tenets of due process. Pl.'s Answer Def.'s Mot. Dismiss [Doc. No. 16] at 10. These allegations are not supported by facts pled in Amended Complaint, and the Court fully addressed the limitations of these arguments in its prior Memorandum Opinion. Mem. Op. [Doc. No. 10] at 3–4.

[37] *Psi Upsilon of Phila.*, 591 A.2d at 758 (citation omitted); *see also Reardon v. Allegheny College*, 926 A.2d 477, 480–84 (Pa. Super. Ct. 2007).

[38] Pl.'s Answer Def.'s Mot. Dismiss [Doc. No. 16] at 15; *see generally* Am. Compl. [Doc. No. 12]. This claim, as pled in the Amended Complaint, focuses on the process Defendant used when determining whether to dismiss Plaintiff after he received two failing grades. *See* Am. Compl. [Doc. No. 12] ¶ 27–41. Plaintiff only raises the contention that he was dismissed for insubordination in his briefing. Pl.'s Answer Def.'s Mot. Dismiss [Doc. No. 16] at 3.

[39] *See* Am. Compl. [Doc. No. 12] ¶¶ 32, 34.

### C. Promissory Estoppel Claim

Defendant next seeks to dismiss Plaintiff's promissory estoppel claim. A promissory estoppel claim requires a plaintiff to "allege that (1) the defendants made a promise that they should have reasonably expected to induce action or forbearance on plaintiff's part; (2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise."[40] The first criterion is only met if the "plaintiff plead[s] facts to show the existence of an express promise made by defendants;" and the plaintiff "cannot rely on a broad and vague implied promise."[41]

Construed generously, the Amended Complaint claims that Plaintiff chose to attend Immaculata because he believed that they would take steps to accommodate the fact that he "lived and worked over two hours away from Immaculata University."[42] The Amended Complaint alleges specifically that Plaintiff "relied on the promises of Sister Acri" as well as "the promises of Immaculata that they would work with working students."[43] However, these promises are too vague to fulfill the first element of a promissory estoppel claim. Although Plaintiff also contends that Defendant violated its policy requiring "that the criteria for passing the course are to be stated in a written syllabus by the course instructor, and distributed at the beginning of the semester," the Amended Complaint does not plead any facts which suggest that this promise could reasonably be expected to induce Plaintiff's action or forbearance and is in

---

[40] *David*, 177 F. Supp. 3d at 926 (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (2000)).

[41] *Rapid Circuits, Inc. v. Sun Nat'l Bank*, No. 10–6401, 2011 WL 1666919, at *18 (E.D. Pa. May 3, 2011) (citation omitted).

[42] Am. Comp. [Doc. No. 12] ¶ 49.

[43] Am. Compl. [Doc. No. 12] ¶¶ 44, 49.

8

any event grounded in contract, not in promissory estoppel.[44] Accordingly, Plaintiff's promissory estoppel claim is dismissed.

### D. *Quantum Meruit* Claim

Finally, Defendant moves to dismiss Plaintiff's *quantum meruit* claim. Plaintiff alleges that Defendant was unjustly enriched by retaining Plaintiff's tuition despite "mishandl[ing] [Plaintiff's] grades and his practicum teaching assignment" and "dismiss[ing] [P]laintiff in an arbitrary and capricious manner, without appropriate due process and fundamental fairness."[45] "*Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services."[46] Under Pennsylvania law, a plaintiff claiming unjust enrichment must allege "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[47]

A plaintiff must show that "the party against whom recovery is sought either wrongfully secured or passively received a benefit that . . . would be unconscionable for [the party] to retain."[48] Enrichment is considered unconscionable or unjust when it was conferred despite a broken promise to return consideration.[49] A student typically cannot claim that retaining tuition

---

[44] Am. Compl. [Doc. No. 12] ¶ 48.

[45] Am. Compl. [Doc. No. 12] ¶¶ 55–56.

[46] *David*, 177 F. Supp. 3d at 926 (citations omitted).

[47] *Durst v. Milroy Gen. Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. Ct. 2012) (quoting *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995)).

[48] *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) (quotation marks and citation omitted).

[49] *Gutteridge v. J3 Energy Group, Inc.*, 165 A.3d 908, 917–18 (Pa. Super. Ct. 2017) (determining that defendant was unjustly enriched where the defendant kept all of the benefits obtained through the plaintiff's efforts and services, despite his promises to provide plaintiff with a portion of the revenue that resulted); *see also Torchia*, 499 A.2d at

payments constitutes unjust enrichment without also alleging that the university failed to hold classes or that the university barred the student from attending classes.[50] Plaintiff has not alleged that Defendant failed to hold or prevented him from attending classes, or that it would otherwise be unconscionable for Defendant to keep his tuition. Plaintiff has therefore failed "to allege how it would be unconscionable for the University to retain the tuition paid for classes that [he] attended,"[51] and his *quantum meruit* claim must be dismissed.[52]

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's breach of contract claim with respect to the Defendant's policy regarding the SRC may proceed, and all other claims in the Amended Complaint are dismissed. As this is his amended complaint, the order will be entered without prejudice. An appropriate order will be entered.

---

583 (finding unjust enrichment where the holder of a life insurance policy promised in a prior agreement to make his children the primary beneficiaries, then subsequently changed it to his spouse when he remarried).

[50] *See Bradshaw v. Pa. State Univ.*, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011); *David*, 177 F. Supp. 3d at 927.

[51] *David*, 177 F. Supp. 3d at 927.

[52] Defendant also argues that this claim must be dismissed because a *quantum meruit* claim is barred where a written contract governs the relationship between the parties. Indeed, under Pennsylvania law, unjust enrichment serves only as an "alternative where 'the existence of a contract is uncertain or its validity is disputed by the parties.'" *Ryan v. Temple Univ.*, 535 F. Supp. 3d 356, 371 (E.D. Pa. 2021) (quoting *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017)). Here, parties do not dispute that they are in a contractual relationship governed by Defendant's PsyD handbook, a full copy of which is attached to Defendant's motion.